**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**TAMIKA J. COURTNEY,**

                **Plaintiff,**                6:12-cv-1157
                                                           (GLS)

                       v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Office of Peter W. Antonowicz | PETER W. ANTONOWICZ, ESQ. |
| 148 West Dominick Street | |
| Rome, NY 13440 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | KATRINA M. LEDERER |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Tamika J. Courtney challenges the Commissioner of Social Security's denial of a period of disability and Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Courtney's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

### II. Background

On May 6, 2010, Courtney filed an application for DIB under the Social Security Act ("the Act"), alleging disability since August 1, 2009. (*See* Tr.[1] at 84, 145-48.)[2] After her application was denied, (*see id.* at 88-92), Courtney requested a hearing before an Administrative Law Judge (ALJ), which was held on June 7, 2011, (*see id.* at 37-77, 100). On August 15, 2011, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 9.)

[2] Courtney also filed an application for Supplemental Security Income on May 6, 2010, but in her Complaint, she only appeals the ALJ's decision denying DIB. (*See* Compl.; Tr. at 149-55.)

Social Security Administration Appeals Council's denial of review. (*See id.* at 1-7, 21-36.)

Courtney commenced the present action by filing her Complaint on July 18, 2012 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 13, 16.)

## III. <u>Contentions</u>

Courtney contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (*See* Dkt. No. 13 at 9-23.) Specifically, Courtney claims that the ALJ erred in: (1) evaluating the medical opinions of record; and (2) assessing her credibility.[3] (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (*See* Dkt. No. 16 at 5-11.)

## IV. <u>Facts</u>

---

[3] Courtney's first and second points are repetitive and will not be addressed separately. (*See* Dkt. No. 13 at 9-19.)

3

The court adopts the parties' undisputed factual recitations. (*See* Dkt. No. 13 at 3-6; Dkt. No. 16 at 1.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Weighing Medical Opinions

Courtney first argues that the ALJ failed to properly evaluate the opinion evidence in accordance with 20 C.F.R. § 404.1527. (*See* Dkt. No. 13 at 9-18.) Specifically, Courtney contends that the ALJ should have accorded "great weight" to the opinion of treating psychiatrist Vidya Patil, and less weight to the opinion of consultative psychiatric examiner Dennis

Noia.[4]  (*Id.* at 9; *see id.* at 10-18.)  The court disagrees.

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner.  20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ must provide "'good reasons' for the weight given to the treating source's opinion."  *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted).  "Nevertheless, where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the

---

[4] Courtney challenges Dr. Noia's examination on the grounds that "the ALJ has no way of knowing if" he complied with the minimum scheduling intervals required by 20 C.F.R. 404.1519n, and because he "rendered conclusions that are identical [sic] those rendered in almost every other report this psychologist has prepared for the Social Security Administration regardless of the identity, diagnosis, and symptoms of the plaintiffs." (Dkt. No. 13 at 11-12.) However, Courtney's counsel did not raise this argument before the ALJ.  "The failure to present an argument to the ALJ constitutes waiver of the right to raise it on appeal."  *Carvey v. Astrue*, No 06-CV-0737, 2009 WL 3199215 at *14 (N.D.N.Y. Sept. 30, 2009).

5

ALJ "'have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" *Id*. (citation omitted).

Here, the ALJ gave "some weight" to the opinion of treating physician Danette Joseph, who opined in August 2010 that Courtney suffered bipolar syndrome with marked difficulties in maintaining social functioning, difficulties in concentration, persistence, or pace, and repeated episodes of deterioration or decompensation. (Tr. at 28-29; *see id.* at 380.) The ALJ explained that Dr. Joseph is not a psychiatric specialist, but an osteopath, and her opinion is not supported by the record. (*See id.* at 28-29.) In addition, the ALJ declined to give controlling weight to the opinion of Dr. Patil, who concluded that Courtney could not perform unskilled work, due to the psychiatrist's limited contact with Courtney. (*See id.* at 29, 426-28.) However, the ALJ gave "great weight" to the opinion of Dr. Noia. (*Id.* at 29; *see id.* at 337-41.)

Courtney contends that the ALJ improperly discounted Dr. Patil's opinion based on their limited personal contact, because Courtney had received "longstanding psychiatric treatment" from the institution at which Dr. Patil worked. (Dkt. No. 13 at 15.) However, "the opinion of a treating

physician is given extra weight because of h[er] unique position resulting from the *continuity* of treatment [s]he provides and the doctor/patient *relationship* [s]he develops." *Petrie*, 412 F. App'x at 405 (internal quotation marks and citation omitted). Moreover, the medical opinions of Dr. Noia and psychiatric consultant M. Tatar, as well as the mental status examinations of record, contradict Dr. Patil's opinion. (*See* Tr. at 340, 363, 367-69, 426-28, 327-31.)

Indeed, school records indicate that Courtney's intellectual functioning was in the low average range. (*See id.* at 230.) On a psychiatric evaluation conducted in June 2009 it was noted that Courtney was neatly dressed, pleasant, cooperative, with good eye contact, normal speech, a range of affect, and fair insight and judgment. (*See id.* at 323-26.) Courtney suffered no thought or perceptual disorder, but complained of being easily distracted and having anxiety in social situations. (*See id.* at 325.) Courtney was assigned a Global Assessment of Functioning (GAF) score of sixty, indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning,[5] and her prognosis was

---

[5] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004)*.*

7

opined to be good.  (*See id.* at 326); Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000).  Thereafter, treatment records indicate GAF scores reflecting some mild symptoms or some difficulty in social, occupational, or school functioning.  (*See* Tr. at 318, 322, 334); Diagnostic and Statistical Manual of Mental Disorders at 34.  Notably, on May 3, 2011—the date Dr. Patil completed her medical source opinion—Courtney was found to be neat and clean, with an appropriate affect, and stable and cheerful mood.  (*See id.* at 437.)  Dr. Patil noted that medication was helping Courtney who denied any severe mood swings or overtly depressed feelings.  (*See id.*)  She further denied any anxiety attacks or recent seizure activity.  (*See id.*)

Ultimately, the ALJ's assessment of the opinion evidence is supported by substantial evidence and, as it is clear that he properly applied section 404.1527(c), the ALJ did not err in failing to methodically discuss each individual factor.  *See* SSR 06-03p, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006) ("Not every factor for weighing opinion evidence will apply in every case.").

**B.   Credibility Determination**

Courtney also argues that the ALJ failed to evaluate her credibility as

8

required under the Regulations. (*See* Dkt. No. 13 at 19-23.) The Commissioner counters, and the court agrees, that the ALJ properly considered Courtney's subjective allegations and found them to be not fully credible. (*See* Dkt. No. 16 at 9-11.)

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6)

9

other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(I)-(vi)).

In this case, the ALJ found that Courtney's statements concerning the intensity, persistence, and limiting effect of her symptoms were not credible to the extent they were inconsistent with his residual functional capacity determination. (*See* Tr. at 29.) Although Courtney argues that the ALJ wholly failed to consider her statements regarding limitations, (*see* Dkt. No. 13 at 21), the ALJ specifically noted that Courtney's testimony with respect to her seizures and headaches was inconsistent with her reports to her treating physician. (*See* Tr. at 28, 63, 390.) Further, the ALJ explained that, although her treatment notes corroborate her claims of mental health limitations, they also indicate improvement with psychotropic medication. (*See id.* at 29, 435-37.) While it is true that the ALJ did not undertake a step-by-step exposition of the factors articulated in 20 C.F.R. § 404.1529(c), "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record." *Judelsohn v. Astrue*, No. 11-CV-

388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) (internal quotation marks and citation omitted); *see Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. § 404.1529(c)(3) factors are included as "'examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding'") (quoting *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546 (S.D.N.Y. 2004)).

Further, the ALJ's credibility determination—that Courtney's subjective complaints were not credible to the extent that they suggested impairment greater than the ability to perform light work, understand and follow simple instructions and directions, perform simple tasks, maintain a schedule, and cope with reasonable levels of simple, repetitive, work-related stress, without constant contact with coworkers, supervisors, and the public—is supported by substantial evidence. (*See* Tr. at 27-28.) Indeed, Courtney's testimony and treatment notes reflect that she worked during some of the relevant period, including, in October 2009, when she reported that she continued to work part time and her "boss ha[d] noted a difference [in her work performance] when she [was] on the Adderall." (*Id.* at 319; *see id.* at 48-49, 195, 308, 320, 337, 404.) Additionally, in June

11

2009 she reported that, although poor focus and concentration made it difficult, she was able to perform all activities of daily living. (*See id.* at 324.) Despite Courtney's claims of disabling mental health symptoms, including anxiety interacting with others, (*see id.* at 65-66), treatment notes reveal that during the relevant period Courtney attended a "cookout" and her son's football practice, traveled to visit family, including a trip to Germany for three weeks and Maryland for one month, played basketball and softball, and began a regular exercise regimen, (*id.* at 313; *see id.* at 315, 329, 331, 420, 445). Treatment records further reveal that Courtney was not complaint with her mental health treatment, including a drug screen in July 2009 which was negative for prescribed medications and positive for non-prescribed medications. (*See id.* at 319, 321, 332-33, 384.)

## C. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and

Courtney's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 16, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court